IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

THELMA PETNO,

     Plaintiff,                                    CASE NO.:

v.

NICHOLAS BURIST; LOCKE
RELOCATIONS LLC; NATIONAL
INDEMNITY COMPANY;
MAYFLOWER TRANSIT LLC;
JOE MOHOLLAND, INC.; PAYNE, INC.;
WESCO INSURANCE COMPANY; AND
XYZ COMPANIES 1-3,

     Defendants.

_____/

# **COMPLAINT FOR DAMAGES**

COMES NOW the Plaintiff, THELMA PETNO, by and through her undersigned counsel, files her Complaint for Damages, showing this Honorable Court as follows: sues the Defendants, NICHOLAS BURIST, LOCKE RELOCATIONS LLC, NATIONAL INDEMNITY COMPANY, MAYFLOWER TRANSIT LLC, JOE MOHOLLAND, INC., PAYNE, INC., WESCO INSURANCE COMPANY, AND XYZ COMPANIES 1-3, and alleges the following:

## **NATURE OF COMPLAINT**

1.    This is a civil action for damages against Defendants arising out of a motor vehicle collision. Plaintiff brings this action to obtain full and complete relief from defendants.

## **PARTIES, JURISDICTION, AND VENUE**

2. The jurisdiction of this Court is invoked pursuant to 29 U.S.C. § 1332, under diversity of citizenship. More than $75,000 is in controversy and Plaintiff and Defendants are citizens of different states for purposes of diversity.

3.      Plaintiff THELMA PETNO is a citizen of Palm Coast, Florida.

4.      THELMA PETNO sustained personal injuries after the vehicle in which she was a passenger was struck by a semi-truck on Interstate 95 in Camden County, Georgia at approximately 2:30 P.M. on July 1, 2022.

5.      Defendant Nicholas Burist ("Defendant Driver") is a citizen and resident of Virginia. At all times relevant hereto, Defendant Driver was an employee/agent of Defendant Mayflower Transit LLC ("Defendant Mayflower" or "Mayflower"); Defendant Locke Relocations LLC ("Defendant Locke" or "Locke"); and Defendant Joe Moholland Inc. ("Defendant Moholland") and was the driver of a 2014 ProStar International tractor Vin # 3HSDJAPR7EN491357 with tag number 59AP8M and trailer leased by Defendant Moholland from Defendant Payne, Inc. ("Defendant Payne" or "Payne") that killed the Decedents and severely injured the Plaintiff. Defendant Driver can be served with process through the Camden County Sheriff at the Camden County Jail in Georgia.

6.      Defendant Driver is a non-resident motorist who availed himself of the laws and protections of the State of Georgia by operating a commercial motor vehicle in Camden County, Georgia, that was owned by Defendant Moholland, Defendant Locke, and/or Defendant Mayflower.

7. Defendant Mayflower Transit, LLC is a foreign, for-profit business entity organized and existing under the laws of the state of Missouri. Its principal place of business is located in Fenton, Missouri. Service may be had upon this defendant at One Premier Drive, Fenton, St. Louis County, Missouri 63026.

8. At all times material herein, Defendant Mayflower engaged in the business of long haul commercial over-the-road trucking and transportation. Additionally, Defendant Mayflower

regularly does and solicits business within the state of Georgia. Further, Defendant Mayflower derived substantial revenue from goods used or consumed or services rendered in Georgia.

9. At all times material herein, Defendant Mayflower was licensed by the U.S. Department of Transportation and was subject to Federal and State laws governing that industry. Defendant Mayflower's DOT number is 125563 and Defendant Driver was operating with this number on his commercial vehicle at the time of this collision.

10. Defendant Joe Moholland is a foreign, for-profit business entity organized and existing under the laws of the state of Virginia. Its principal place of business is in Woodbridge, Virginia. Service may be had upon this defendant at 15481 Farm Creek Drive, Woodbridge, Virginia 22191.

11. At all times material herein, Defendant Moholland was licensed by the U.S. Department of Transportation and was subject to Federal and State laws governing that industry. Defendant Moholland's DOT number is 486221. Defendants Moholland and/or Mayflower were the direct owner of the tractor trailer that severely injured the Plaintiff.

12. Defendant Locke Relocation, LLC is a foreign, for-profit business entity organized and existing under the laws of the state of Virginia. Its principal place of business is located at 1604 Wickham Ave., Newport News, VA, 23607.

13. At all times material herein, Defendant Locke was licensed by the U.S. Department of Transportation and was subject to Federal and State laws governing that industry. Defendant Locke's DOT number is 2799903.

14. That, upon information and belief, Defendant Locke is an authorized for hire intrastate carrier who hired Defendant Driver under the authority of and for the benefit of all Defendants.

15. Defendant Payne, Inc., is a foreign, for-profit business entity organized and existing under the laws of the state of Virginia. Its principal place of business is in Fredericksburg, Virginia. Service may be had upon this defendant through its registered agent, Daniel Payne, at 10411 Hall Industrial Drive, Fredericksburg, Virginia 22408.

16. At all times material herein, Defendant Payne was licensed by the U.S. Department of Transportation and was subject to Federal and State laws governing that industry. Defendant Payne's DOT number is 194795. Defendant Payne was the owner of the trailer that severely injured the Plaintiff.

17. That, upon information and belief, Defendant Payne is an authorized for hire interstate carrier who leased the trailer driven by Defendant driver to Defendant Moholland.

18. Defendant Wesco Insurance Company ("Defendant Wesco" or "Wesco") covered Defendants Mayflower, Locke, and Moholland and their employees with a policy of insurance at all times pertinent to this Complaint for Damages and therefore it is subject to the jurisdiction and venue of this Court. Said policy was written for and provided to a motor carrier. This direct action is, therefore, permitted by O.C.G.A. § 40-1-112. Defendant Wesco is a foreign insurance company organized and existing under the laws of New Mexico. Defendant Wesco may be served through its registered agent, to wit, United Agent Group Inc., 2985 Gordy Parkway, 1st Floor, Marietta, Cobb County, Georgia.

19. Defendant National Indemnity Company ("Defendant National Indemnity" or "National Indemnity") covered Defendants Mayflower, Locke, and Moholland and their employees with a policy of insurance at all times pertinent to this Complaint for Damages and therefore it is subject to the jurisdiction and venue of this Court. Said policy was written for and provided to a motor carrier. This direct action is, therefore, permitted by O.C.G.A. § 40-1-112.

4

Defendant National Indemnity is a foreign insurance company organized and existing under the laws of Nebraska. Defendant National Indemnity may be served through its registered agent, to wit, Andrea Conarro, Esq., Law Office of Andrea Conarro, LLC, 439 South Park Street, Unit A, Dahlonega, GA 30533.

20. Defendant XYZ Companies Nos. 1-3 are not-yet-identified entities which either owned, operated, placarded, maintained, controlled, insured or were otherwise responsible for the tractor and/or trailer in the motor vehicle collision pertinent to this action and/or employed, were a principal of, or otherwise had an agent/principal relationship with the named Defendants on the date of the wreck at issue, or are otherwise liable for the wreck at issue. Defendants XYZ Companies Nos. 1-3 will be named and served with Summons and Complaint once their respective identities are revealed.

21. That herein, Defendant Mayflower, Defendant Locke, Defendant Moholland, Defendant Payne, Defendant National Indemnity, Defendant Wesco, Defendant Driver, and Defendants XYZ are referred to collectively as the "Defendants."

22. Pursuant to O.C.G.A. § 14-2-504 Defendant Mayflower, Defendant Locke, Defendant Moholland and Defendant Payne may be served with Process upon their registered agent and/or on the Secretary of State pursuant to Georgia Non-Resident Motorist Act, O.C.G.A. § 40-12-1 et seq.

23. In accordance with 28 U.S.C § 1391 (c) and (d), venue is proper in the Southern District of Georgia as Defendants maintain minimum contacts, transact business in the Southern District of Georgia, and are therefore subject to personal jurisdiction. Additionally, and more specifically, venue is appropriate in this Court and this Court has personal jurisdiction over

Defendants because the incident causing the tortious injury giving rise to this complaint took place in the Southern District of Georgia. As pleaded herein, subject matter jurisdiction, personal jurisdiction, and venue are proper.

## DEFENDANTS' ORGANIZATIONAL STRUCTURE

24. At all times relevant to the Complaint, Defendant Driver was employed and working in the course and scope of his employment with Defendant Mayflower, Defendant Locke, and/or Defendant Moholland. Defendant Driver operated the tractor-trailer in furtherance of Mayflower Transit, Defendant Locke, and/or Defendant Moholland's business.

25. Defendant Mayflower, Defendant Locke, and Defendant Moholland are liable for all Defendant Driver' acts under the doctrine of respondeat superior, agency, ostensible/apparent agency, and/or master-servant doctrines.

26. That at all times material, Defendant Moholland was the owner and/or lessor/lessee of the commercial tractor-trailer driven by Defendant Driver and a trailer leased to Defendant Moholland by Defendant Payne. Defendant Moholland is an agent for Defendant Mayflower.

27. Upon information and belief, Defendant Locke is an agent for Defendant Moholland and Defendant Mayflower.

28. Defendant Moholland advertises on its Facebook page that "We are a Mayflower moving and storage company that operates out of Virginia and the Washington DC area, and we provide all types of moving and storage services both locally and internationally." https://www.facebook.com/joemohollandmoving/

29.     Defendant Mayflower authorized and was responsible for the use of said tractor-trailer by Defendant Driver, and under its authority as a motor carrier. Defendant Mayflower's DOT numbers were displayed on the tractor trailer.

30. At one time, prior to this incident, Moholland advertised the relationship between Moholland and Mayflower on their website homepage which read, "with our high expectations from when we began in 1987, we were able to meet Mayflower's expectations in 1998 and become an agent for them to help people move all across the globe."

31. That Defendant Moholland and/or Defendant Mayflower was the broker for the relocation of household goods through their agents, Defendant Locke and Defendant Driver.

32. Defendant Moholland and/or Defendant Mayflower chose to retain, and/or hire Defendant Locke and Defendant Driver without ensuring that they could operate in a safe and competent manner by, in part, failing to ensure the proper selection of an authorized interstate motor carrier who had the proper financial security.

33. Defendant Mayflower and/or Defendant Moholland failed to properly lease and/or terminate the lease of the commercial motor vehicle operated by Defendant Driver at the time of the collision. Defendant Mayflower and/or Defendant Moholland is also liable for the negligent brokerage and/or arranging/facilitating the shipping of household goods through Defendant Locke, who it knew or should have known was untrained, unskilled, unsuitable, unexperienced, and/or unqualified to do so.

34. Federal Motor Carrier Safety Regulations require an interstate carrier that leases a vehicle to (1) make the arrangement in writing signed by the parties specifying the duration and the compensation to be paid by the carrier, (2) carry a copy of the arrangement in each motor vehicle to which it applies during the period the arrangement is in effect, (3) inspect the motor vehicle and obtain liability and cargo insurance on it, and (4) have control of and be responsible for operating the vehicle in compliance with the federal regulations and other applicable laws as if the motor vehicle was owned by the carrier.

35. However, Defendants were negligent in failing to properly terminate the lease within the time prescribed or failed to have a reasonable time period, and as a result, the relationship continued between Mayflower and Moholland, by and through Defendant Driver and Defendant Locke. This is further evidenced by the DOT, License Plate numbers, identification numbers, placards, and signage on the truck/trailer at the time of the incident.

36. Moholland acted as an agent of Mayflower. As a part of the agency, Moholland uses and stores Mayflower trucks/trailers on its address listed for business activity. Further, many employees, agents, representatives, and officials are shared by both Mayflower and Moholland.

37. Upon information and belief, Defendant Driver has an email address that is registered to Mayflower ending in @mayflower.com.

38. That upon information and belief, Defendants Moholland and Mayflower have (or had at the time of this incident) identical or nearly identical ownership, governance, management, office locations, letterhead, equipment, telephone numbers, and other indicia of corporate identity. In fact, the former sign outside of Moholland's listed business address stated, "Mayflower Transit Joe Moholland Moving," and when viewing Google Street images, there exists Mayflower commercial motor vehicles, trailers, and other entities/subsidiaries of Mayflower.

39. That upon information and belief, Defendant Moholland and Defendant Mayflower are so intertwined within the corporate web as to constitute a single business enterprise, and/or partnership.

40. That injustice to Plaintiff and/or others would result were this Court to recognize any legal distinction between Defendant Moholland and Defendant Mayflower, when the entities themselves have blurred, ignored, or wholly erased such distinctions. The operation of

Moholland and Mayflower are essentially one business acting as a broker for the shipping company that it negligently hired and retained, Locke Relocations.

41. The purpose of Moholland and Mayflower commingling vehicles and property is based on shipper/broker liability. The goal between the two and Defendant Locke is avoiding safety regulations by the practice of leasing equipment from and to non-regulated carriers. Therefore, the Defendants attempt to shield themselves from liability as carriers as part of lease agreements, indemnity agreements, and purported due diligence searches. These Defendants are attempting to shift blame to the shipper, Locke Relocations. Due to Defendant Locke having little or no experience with long-haul traveling and/or interstate traveling per the FMSCA, the Defendants sham safety regulations and their financial responsibility, attempting to shift the same to shippers, lessors, leases, employees and/or other members of the public.

42. Simply, the relationship formed between Moholland, Locke, and Mayflower was designed with the purpose of skirting financial and safety responsibility through their driver, Defendant Driver.

43. No reasonably prudent shipper, broker, agent, or master would have hired or allowed Defendant Driver to take possession of their truck/trailer.

44. Defendants knew or should have known that Defendant Locke is not authorized to travel in interstate commerce.

45. That upon information and belief, at all times relevant hereto, Mayflower, Locke, and Moholland were acting in concert and/or alternatively, Moholland and Defendant Locke were acting as authorized agent for Mayflower, and all improper acts and unlawful conduct of Defendants Locke, Moholland and Defendant Driver are attributable to Defendants Locke, Moholland and Mayflower.

46. Defendant Mayflower uses its marketing and advertising to encourage and promote the services its agents, Defendant Moholland and Defendant Locke, for its own pecuniary gain.

## GENERAL ALLEGATIONS

47. Plaintiff incorporates herein by reference all of the allegations of the previous paragraphs of this Complaint.

48. That on or about July 1, 2022, Defendant Driver, in his capacity as an employee/agent and/or apparent agent of Defendant Moholland, Defendant Locke, and Defendant Mayflower, was traveling southbound on I-95 in Camden County, Georgia.

49. That on or about July 1, 2022, Defendant Driver, after recklessly colliding with other vehicles, left his lane of travel and began to travel through the center guardrails.

50. After traveling through the guardrails, the tractor trailer entered the northbound lane of travel and struck the 2007 Nissan bearing FL license plate number 90JEA and VIN # 5N1AN08W47C548103. Plaintiff was a passenger in the 2007 Nissan.

51. The Defendant Driver suddenly and without warning left his proper lane of travel, crossed over the median and forcefully struck the vehicle in which Plaintiff was a passenger.

52. As a result of Defendants' negligence, four people died, and several more were hospitalized and/or injured including the Plaintiff.

53. Further, the interstate was closed in both directions for several hours.

54. As set forth in the Georgia Motor Vehicle Crash Report, specifically Report Number C000745264-01, Defendant Driver was driving under the influence of drugs and/or alcohol which was also one of the contributing factors of Plaintiff's injuries. This action by Defendant Driver constitutes a violation of O.C.G.A § 40-6-391 and is negligence per se under Georgia law.

55. As a result of the incident, Defendant Driver received several citations for violation of Georgia law from the Georgia State Patrol investigation officer. These citations include (1) O.C.G.A. § 40-8.76.1; (2) O.C.G.A. § 40-6-393(A); (3) O.C.G.A. § 16-13-2(b); (4) O.C.G.A. § 40-6-253; (5) O.C.G.A. § 40-6-49; (6) O.C.G.A. § 40-6-48; (7) O.C.G.A. § 40-1-8(b)(2)(E); (8) O.C.G.A. § 40-6-391(a)(1-5); and (9) O.C.G.A. § 40-6-39. These violations of Georgia law by Defendant Driver are negligence per se.

56. In addition to the above, Defendant Driver was also negligent per se in violating laws of the State of Georgia. Specifically, Defendant Driver violated O.C.G.A § 40-6-48 in failing to maintain his lane of travel; O.C.G.A § 40-6-93 in failing to exercise due care; O.C.G.A § 40-6-390 for driving reckless; and O.C.G.A § 40-6-394 for causing serious injury by a vehicle.

57. That at all times material hereto, Defendant Driver had a duty to operate the vehicle he was driving in a safe and prudent manner and to avoid injuring other motorists, specifically the Plaintiff.

58. Defendant Driver chose not to operate the tractor-trailer with the due care exercised by individuals in like or similar circumstances and operated the vehicle in a manner showing a disregard for the safety of others, including the Plaintiff. All Defendants are legally responsible for these actions and inactions of Defendant Driver.

59. Following the collision, as relevant to Defendants, pertaining to the negligent maintenance, repair, operation, and entrustment of the vehicle, the truck/trailer had the following deficiencies in violation of Federal Motor Carrier Safety Regulations: 393.75(a)(1) (Tire-ply or belt material exposed: Tractor: Left side axle number 1 outside tire has belt material exposed); 393.75(a)(3) (Tire-flat and/or audible air leak: Tractor: Right side axle number 1 tire is flat.); 393.48(a) (Inoperative/defective brakes: Tractor: Right side axle number 3 brake drum friction

surface is contaminated by oil and grease); 396.5(b) (Hubs - Wheel seal leaking - inner wheel: Tractor: Right side axle number 3 inner wheel seal actively leaking); 393.207(a) (Axle positioning parts defective/missing: Tractor: Left side axle number 1 u-bolt assembly is cracked); 393.75(a)(3) (Tire-flat and/or audible air leak: Trailer: Right side axle number 1 and 2 outside tire is flat); 393.201(a) (Frame cracked / loose / sagging / broken: Trailer: Floor is sagging); 393.11 (No or defective lighting devices or reflective material as required: Trailer: 4 of 6 side marker lamps missing); 393.83(g) (Exhaust leak under driver and/or sleeper compartment: Tractor: Exhaust leak under cab, whole in exhaust.); 393.48(a) (Inoperative/defective brakes: Trailer: Right side axle number 1 brake is defective. Brake drum is rusted.); 393.60(c) (Damaged or discolored windshield: Tractor: Windshield cracked.); and 396.3(a)(1) (BRAKES OUT OF SERVICE: The number of defective brakes is equal to or greater than 20 percent of the service brakes on the vehicle or combination).

60. One or more of the above deficiencies existed prior to the collision, and Defendants knew or should have known the nature and extent yet chose not to maintain and/or repair in accordance with industry standards, and the rules and regulations of the Federal Motor Carrier Safety Act and Georgia law.

61. Plaintiff acted with reasonable care under the conditions and circumstances then existing.

62. Plaintiff did nothing to contribute to her bodily injuries.

## COUNT ONE - NEGLIGENCE OF NICHOLAS BURIST

63. Plaintiff incorporates herein by reference all of the allegations of the previous paragraphs of this Complaint.

64. At all times material hereto, Defendant Driver was a professional driver with a commercial driver's license, and, at the time of the incident, was driving a dangerous vehicle entrusted to him by Defendant Moholland, Defendant Locke, and Defendant Mayflower.

65. At all times material hereto, Defendant Driver was driving a commercial motor vehicle in interstate commerce and was subject to not only to Georgia traffic laws and trucking safety regulations, but also the Federal Motor Carrier Safety Regulations.

66. At all times material hereto, Defendant Driver owed a duty of care to maintain and operate its commercial motor vehicle in a safe manner in compliance with all safety rules, including statutes, rules and regulations governing the operation and maintenance of vehicles including tractor trailers upon Georgia, and interstate roadways.

67. Defendant Driver was negligent in the operation, maintenance, and inspection of the commercial motor vehicle he was driving.

68. Defendant Driver was driving in a grossly negligent manner, including driving recklessly and erratically before losing control of his tractor trailer and severely injuring the Plaintiff.

69. Defendant Driver's actions in failing to stop and/or slow his tractor trailer showed willful misconduct or an entire want of care, which would raise the presumption of conscious indifference to consequences as defined by O.C.G.A. § 51-12-5.1. Thus, Plaintiff is also entitled to an award of punitive damages.

70. Defendant Driver was negligent, grossly negligent, and/or negligent per se which constitutes the direct and proximate cause of the injury to Plaintiff also consisted of, but is not limited to the following:

a) Not maintaining control of his vehicle in violation of O.C.G.A. § 40-6-48;

b) Driving an unsafe vehicle in violation of O.C.G.A. § 40-8-7;

c) Not keeping his vehicle under control at all times, in violation of O.C.G.A. § 40-6-390;

d) Not exercising due care in operating a motor vehicle in violation of O.C.G.A. § 40-6-241;

e) Acting in reckless disregard for the safety of persons or property in violation of O.C.G.A. § 40-6-241.2;

f) Not keeping a proper lookout;

g) Driving under the influence of alcohol and/or drugs in violation of O.C.G.A. § 40-6-391;

h) Not adhering to safe driving principles expected of professional drivers;

i) Not operating the truck in accordance with generally accepted safety principles for professional drivers and/or the commercial motor vehicle industry;

j) Not operating the truck in a safe and prudent manner in view of the conditions that existed at the time of the subject collisions;

k) Violating the Georgia Uniform Rules of the Road including O.C.G.A. § 40-6-49 (following too closely); O.C.G.A. § 40-6-180 (failing to drive his vehicle at a reasonable and prudent speed under the conditions); O.C.G.A. § 40-6-390 (driving a vehicle in reckless disregard of the safety of persons or property); and any other violations, each of which constitute negligence per se;

l) Otherwise failing to act reasonably and prudently as a professional commercial driver should under the circumstances; and

m) Such other specifications of negligence that shall be added by amendment or proven at trial.

14

71. At the time of the subject wreck, Defendant Driver had a duty to drive in conformance with the Federal Motor Carrier Safety Regulations and Georgia law as well as the industry and corporate standards and guidelines emanating from these safety regulations and Georgia law, including, but not limited to, the Required Knowledge and Skills set forth in 49 CFR §§ 383.111 and 383.113 as well as the mandates of 49 CFR §§ 390-395.

72. Alone or in conjunction with the negligence of the other defendants, Defendant Nicholas Burist's negligence directly and proximately caused Plaintiff's injuries and damages. Defendant Nicholas Burist is therefore liable for Plaintiff's injuries and damages.

### COUNT TWO - NEGLIGENCE OF MAYFLOWER TRANSIT

73. Plaintiff incorporates herein by reference all of the allegations of the previous paragraphs of this Complaint.

74. At all times material hereto, Defendant Driver was an employee, agent, and/or apparent agent of Defendant Mayflower acting within the scope of course of his employment or agency.

75. Defendant Moholland acted as an agent of Defendant Mayflower and in furtherance of Defendant Mayflower's business.

76. Defendant Locke acted as an agent of Defendant Moholland and in furtherance of Defendant Moholland's business.

77. At all times material hereto, Defendant Driver was operating a commercial motor vehicle under dispatch and under the authority granted to Defendant Driver by Defendant Mayflower.

78. Defendant Driver was operating on behalf of Defendant Mayflower and in furtherance of the business of Defendant Mayflower.

79. At all times material hereto, Defendant Mayflower, Defendant Locke, and/or Defendant Moholland maintained immediate direction and control of Defendant Driver, and the vehicle he was operating.

80. Plaintiff suffered injuries, harm, and damages as a result of Defendant Mayflower's employee's operation of the subject vehicle in a negligent and reckless manner.

81. Defendant Mayflower is liable for its own negligence and for the tortious acts, negligence and for the negligent actions and omissions of Defendant Driver, Defendant Locke, and Defendant Moholland pursuant to the doctrine of respondeat superior, rules of agency and by operation of common law, apparent agency, and Federal Motor Carrier statutes and regulations.

82. As a direct and proximate result of the foregoing breaches of duties, Plaintiff suffered the injuries and damages laid out herein.

## COUNT THREE – VICARIOUS LIABILITY – MAYFLOWER, AS STATUTORY EMPLOYER UNDER FMSCR

83. Plaintiff incorporates herein by reference all of the allegations of the previous paragraphs of this Complaint.

84. The Federal Motor Carrier Safety Regulations ("FMCSR"), define two types of motor carriers: (a) "private motor carriers" as "a person who provides transportation of property or passengers, by commercial motor vehicle, and is not a for-hire motor carrier," and (b) "for-hire motor carriers" as "a person engaged in the transportation of goods or passengers for compensation." 49 C.F.R. § 390.5

85. When used in the FMCSR, the term "motor carrier" "means a for-hire motor carrier or a private motor carrier" and "includes a motor carrier's agents, officers and representatives as well as employees responsible for hiring, supervising, training, assigning, or dispatching of

drivers and employees concerned with the installation, inspection, and maintenance of motor vehicle equipment and/or accessories." 49 C.F.R. § 390.5.

86. The FMCSR defines a "driver" as "any person who operates any commercial vehicle." 49 C.F.R. § 390.5.

87. The FMCSR defines "employee" as "any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial vehicle (including an independent contractor while in the course of operating a commercial motor vehicle), a mechanic, and a freight handler. Such term does not include an employee of the United States, any State, any political subdivision of a State, or any agency established under a compact between States and approved by the Congress of the United States who is acting within the course of such employment." 49 C.F.R. § 390.5 (emphasis added).

88. The FMCSR defines "employer" as "any person engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it, but such term does not include the United States, any State, any political subdivision of a State, or an agency established under a compact between States approved by the Congress of the United States." 49 C.F.R. § 390.5.

89. The FMSCR defines "broker" as "a person who, for compensation, arranges, or offers to arrange, the transportation of property by an authorized motor carrier. Motor carriers, or persons who are employees or bona fide agents of carriers, are not brokers within the meaning of this section when they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport." 49 C.F.R. § 371.2(a) (emphasis added).

90. Defendant Mayflower is an "authorized motor carrier" subject to the Federal Motor Carrier Safety Regulations.

91. Defendant Mayflower operates under USDOT number 2881058; MC Number 2934; and Freight Forwarding Number 7137. 97. As part of its operations as a motor carrier, Defendant Mayflower maintains a fleet of trucks and other equipment, including owned and leased trailers.

92. Defendant Mayflower was legally bound to transport the cargo and/or equipment used to transport such cargo that was being transported by Defendant Burist at the time of the wreck with Plaintiff.

93. Defendant Mayflower was acting as a "motor carrier" of the tractor trailer at the time of its collision with Plaintiff and was the statutory employer of Defendant Burist.

94. Defendant Mayflower arranged for Defendant Moholland and Defendant Locke to transport the cargo that Defendant Mayflower was legally bound to transport.

95. At all times relevant to this Complaint and to the motor vehicle collision at issue, the tractor-trailer being operated by Defendant Burist contained markings identifying it as it being "Operated by Mayflower Transit Fenton, MO."

96. Defendant Mayflower had knowledge or should have had knowledge of Defendant Burist transporting goods under its authority within days and/or weeks prior to the subject collision.

97. Defendant Mayflower, through agreement with Defendant Moholland and/or Defendant Locke, had the right to control and/or did control the activities and work of Defendant Moholland and/or Defendant Locke and its drivers, including Defendant Burist, by:

a. Defining the delivery route drivers must take while engaged in the transport of Mayflower loads and/or equipment;

18

b. Requiring that drivers receive its advance approval for any trip layover time, driver detention, route changes, payment of tolls, and other matters of operation;

c. Establishing set times for the pickup and delivery of Mayflower loads for drivers;

d. Such other means of control over the operations, activities, and work of drivers operating as provided for by Mayflower's agreements with Moholland and/or Locke;

e. Listing Defendant Burist as an agent on its website and giving him an email address within its domain;

f. Allowing or ordering Defendant Burist to operate its equipment, including its trailer;

g. Providing that Mayflower was not required to pay any money to Moholland unless it followed specifically Mayflower's rules, policies, and procedures in the transit or delivery of any cargo assigned by Mayflower to Moholland; and

h. Requiring Moholland to keep and provide documents to and for Mayflower related to routes, deliveries, payments, and other matters.

98. At all times relevant to this Complaint and the motor vehicle collision that is the subject of this action, Defendant Mayflower, was Defendant Burist's statutory employer while Defendant Burist was engaged in the transportation of Mayflower's loads and/or equipment.

99. Defendant Burist was a statutory employee of Mayflower under 49 U.S.C. § 31132(2).

100. Accordingly, Defendant Mayflower is vicariously liable under the doctrine of respondeat superior for Defendant Burist's negligent acts and/or omissions committed during the course and scope of his agency and/or employment, and Defendant Burist was operating under the authority of Mayflower, or, at minimum, under the shared authority of Mayflower and Moholland and/or Locke.

101. Therefore, Plaintiff may recover from Defendant Mayflower for their injuries and damages.

## COUNT FOUR - NEGLIGENCE OF JOE MOHOLLAND

102. Plaintiff incorporates herein by reference all of the allegations of the previous paragraphs of this Complaint.

103. At all times material hereto, Defendant Driver was an employee, agent, and/or apparent agent of Defendant Moholland and Defendant Locke acting within the scope of course of his employment or agency.

104. At all times material hereto, Defendant Driver was operating a commercial motor vehicle under dispatch and under the authority granted to Defendant Driver by Defendant Moholland.

105. Defendant Driver was operating on behalf of Defendant Moholland and in furtherance of the business of Defendant Moholland.

106. Defendant Moholland, Defendant Locke, and/or Defendant Mayflower gave Defendant Driver and their employees/agents authority to perform services on their behalf.

107. Plaintiff suffered injuries, harm, and damages as a direct and proximate result of Defendant Moholland's Employee's operation of the subject vehicle in a negligent and reckless manner.

108. Defendant Moholland is liable for its own negligence and for the tortious acts, negligence and for the negligent actions and omissions of Defendant Driver, Defendant Locke, and Defendant Mayflower pursuant to the doctrine of respondeat superior, rules of agency and by operation of common law and Federal Motor Carrier statutes and regulations.

109. Therefore, Plaintiff may recover from Defendant Moholland for their injuries and damages.

## COUNT FIVE - NEGLIGENCE OF LOCKE RELOCATIONS

110. Plaintiff incorporates herein by reference all of the allegations of the previous paragraphs of this Complaint.

111. At all times material hereto, Defendant Driver was an employee, agent, and/or apparent agent of Defendant Locke acting within the scope of course of his employment or agency.

112. At all times material hereto, Defendant Driver was operating a commercial motor vehicle under dispatch and under the authority granted to Defendant Driver by Defendant Locke.

113. Defendant Driver was operating on behalf of Defendant Locke and in furtherance of the business of Defendant Locke.

114. Defendant Moholland, Defendant Locke, and/or Defendant Mayflower gave Defendant Driver and their employees/agents authority to perform services on their behalf.

115. Plaintiff suffered injuries, harm, and damages as a direct and proximate result of Defendant Locke's Employee's operation of the subject vehicle in a negligent and reckless manner.

116. Defendant Locke is liable for its own negligence and for the tortious acts, negligence and for the negligent actions and omissions of Defendant Driver, Defendant Moholland, and Defendant Mayflower pursuant to the doctrine of respondeat superior, rules of agency and by operation of common law and Federal Motor Carrier statutes and regulations.

117. Therefore, Plaintiff may recover from Defendant Locke for their injuries and damages.

## COUNT SIX - NEGLIGENT HIRING, TRAINING, RETENTION, SUPERVISION, AND MAINTENANCE/REPAIR BY DEFENDANTS MOHOLLAND, LOCKE, AND MAYFLOWER

118. Plaintiff incorporates herein by reference all of the allegations of the previous paragraphs of this Complaint.

119. Defendant Moholland, Defendant Locke, Defendant Mayflower Transit have certain duties and responsibilities, including but not limited to those defined by the Federal Motor Carrier Safety Regulations, State trucking safety regulations and trucking industry standards.

120. Those duties include the duty to properly qualify Defendant Driver, the duty to properly train Defendant Driver, the duty to properly supervise Defendant Driver, the duty to properly inspect and maintain its vehicles, and the duty to otherwise establish and implement appropriate management controls and systems for the safe operation of its commercial motor vehicle.

121. Defendant Moholland, Defendant Locke, and Defendant Mayflower were negligent and/or grossly negligent in one or more of the following particulars:

(a) In negligently entrusting the vehicle to someone Defendants knew or should have known would operate the vehicle without using due care and without regard for the safety and rights of the public using the roadway and the Plaintiff in particular;

(b) In negligently entrusting the vehicle to someone they knew or should have known would operate the vehicle in a negligent, grossly negligent, careless, reckless, willful, wanton, and unlawful manner as to create a dangerous situation and render a collision inevitable or highly likely, in disregard of the laws of the State of Georgia;

(c) In negligently entrusting the vehicle to someone they knew or should have known would fail to exercise that degree of care that a reasonable and prudent person would have exercised under the same or similar circumstances;

(d) In choosing not to appreciate the gravity and seriousness of having an unsafe, unqualified driver with a history of careless driving use their vehicle;

(e) In choosing not to ensure that the driver of their vehicle would comply with all applicable statutory codes and regulations;

(f) In choosing not to properly hire, train, and/or supervise their employee/agent driver Defendant Driver to ensure that the vehicle was driven and operated in a safe and proper manner;

(g) In choosing not to properly train and/or supervise their employee/agent driver Defendant Driver and others involved with maintenance, repair, regulatory compliance, and/or safety to ensure that proper pre-trip, post-trip, periodic, quarterly, and/or annual inspections were performed, including properly on the subject vehicle, and its component parts;

(h) In choosing, by and through their employee/agent driver Defendant Driver, not to have the required driver knowledge necessary in order to safely operate the subject vehicle, including but not limited to the procedures to obey traffic laws and the rules of the road;

(i) In choosing not to create, maintain, adhere to, and/or implement appropriate policies and procedures to ensure alcohol and drugs were not being used or consumed by its employees and drivers;

(j) In choosing not to create, maintain, and/or implement appropriate policies and procedures related to inspection and safety for its drivers, including their employee/agent driver Defendant Driver, and for safety, regulatory compliance, and/or inspection, maintenance, and service of motor vehicle;

(k) In choosing not to properly and/or timely inspect, maintain, service, and/or repair the subject vehicle/trailer and its component parts to ensure that the same could be utilized and operated safety;

(l) In choosing not to use due care;

(m) In any other acts that represent a breach of the statutory or common laws of the State of Georgia or the United States; and

(n) In any other such manner that Plaintiff may become aware of through discovery and/or at trial.

122. Additionally, Defendants knew or should have known about Defendant Driver's drug and/or alcohol addiction and abuse of drugs.

123. Defendants knew or should have known about Defendants current use, abuse and/or addiction to drugs and/or alcohol.

124. Defendants knew or should have known that Defendant Driver's current and/or past addiction to drugs and alcohol and/or abuse of drugs could cause severe injuries and/or death to the general public, including the Plaintiff.

125. Despite having the aforesaid knowledge, Defendant Moholland, Defendant Locke, and Defendant Mayflower hired and retained Defendant Driver and allowed him to operate a vehicle while in its employ.

126. Despite knowing, or having reasons to know of the above, Defendants failed to terminate Defendant Driver prior to this collision, and continued to allow him to operate the commercial motor vehicle to facilitate Defendants' business interests.

127. Defendant Mayflower, Defendant Locke, and Defendant Moholland not only allowed Defendant Driver to operate the vehicle within the state of his residence, Virginia, but allowed, facilitated, and encouraged Defendant Driver's transportation throughout the United States without properly monitoring or supervising this driver.

128. Defendant Mayflower was independently negligent in hiring, qualifying, training, entrusting, supervising, and retaining Defendant Driver in connection with his operation of its commercial motor vehicle.

129. Defendant Moholland was independently negligent in hiring, qualifying, training, entrusting, supervising, and retaining Defendant Driver in connection with his operation of its commercial motor vehicle.

130. Defendant Locke was independently negligent in hiring, qualifying, training, entrusting, supervising, and retaining Defendant Driver in connection with his operation of its commercial motor vehicle.

131. As a direct and proximate result of the negligence, gross negligence, carelessness, recklessness, willfulness and wantonness of Defendants, as is set forth more fully herein, Plaintiff suffered severe injuries, has endured, and will endure, pain and suffering, suffered mentally and emotionally, and have incurred, and will incur, various medical expenses.

132. Defendant Moholland, Defendant Locke, and Defendant Mayflower are liable for all damages allowed by law for the injuries, damages, and losses sustained by the Plaintiff.

## COUNT SEVEN – NEGLIGENCE OF PAYNE

133. Defendant Payne is a motor carrier as defined by the Federal Motor Carrier Safety regulations and was engaged in interstate commerce.

134.  Defendant Payne is subject to the Federal Motor Carrier Safety Regulations.

135.  Upon information and belief, Defendant Payne owned the trailer being operated by the Defendant driver and leased the trailer to Defendant Moholland.

136.  Defendant Payne has certain duties and responsibilities as defined by the Federal Motor Carrier Safety Regulations and industry standards, including a duty to properly inspect, repair and maintain its trailers for the safe operation of the trailers.

137.  Defendant Payne was negligent in failing to meet its duties and responsibilities under the Federal Motor Carrier Safety Regulations, Georgia law, and industry standards in the inspection, maintenance, and repair of the trailer operated by the Defendant driver in the following ways:

a) Driving an unsafe vehicle in violation of O.C.G.A. § 40-8-7;

b) 393.75(a)(3) (Tire-flat and/or audible air leak: Trailer: Right side axle number 1 and 2 outside tire is flat);

c) 393.201(a) (Frame cracked / loose / sagging / broken: Trailer: Floor is sagging);

d) 393.11 (No or defective lighting devices or reflective material as required: Trailer: 4 of 6 side marker lamps missing);

e) 393.83(g) (Exhaust leak under driver and/or sleeper compartment: Tractor: Exhaust leak under cab, whole in exhaust.);

f) 393.48(a) (Inoperative/defective brakes: Trailer: Right side axle number 1 brake is defective. Brake drum is rusted.)

138. As a direct and proximate result of the negligence, gross negligence, carelessness, recklessness, willfulness and wantonness of Defendant Payne, as is set forth more fully herein, Plaintiff has suffered severe injuries, has endured, and will endure, pain and suffering, suffered mentally and emotionally, and have incurred, and will incur, various medical expenses.

139. Defendant Payne is liable for all damages allowed by law for the injuries, damages, and losses sustained by the Plaintiff.

## COUNT EIGHT - PUNITIVE DAMAGES AGAINST NICHOLAS BURIST

140. Plaintiff incorporates herein by reference all of the allegations of the previous paragraphs of this Complaint.

141. Defendant Driver is guilty of such willful misconduct, malice, wantonness, oppression, and an entire want of care sufficient to raise to the presumption of conscious indifference to consequences.

142. Defendant Driver's misconduct is so aggravating it authorizes, warrants, and demands the imposition of substantial punitive damages against Defendant Driver pursuant to O.C.G.A. § 51-12-5.1.

143. Defendant Driver took deliberate actions in choosing to violate Federal Motor Carrier Safety Regulations, State trucking safety regulations, trucking industry standards, and Georgia law by operating a commercial vehicle under the influence of drugs and alcohol, driving recklessly and grossly negligently, and in other ways that shall be proven at the trial of this matter.

144. Any cap on the amount of punitive damages applied in this case would be unconstitutional for several reasons, including that it contravenes the inviolate right to trial by jury contained in Georgia's Constitution.

## COUNT NINE - PUNITIVE DAMAGES AGAINST DEFENDANT
## MAYFLOWER, LOCKE, MOHOLLAND AND PAYNE

145. Plaintiff incorporates herein by reference all of the allegations of the previous paragraphs of this Complaint.

146. Defendant Moholland, Defendant Locke, Defendant Mayflower and Defendant Payne have been guilty of such willful misconduct, malice, wantonness, oppression, and an entire want of care sufficient to raise to the presumption of conscious indifference to consequences.

147. Defendants' misconduct is so aggravating it authorizes, warrants, and demands the imposition of substantial punitive damages against Defendant Moholland, Defendant Locke, Defendant Mayflower and Defendant Payne pursuant to O.C.G.A. § 51- 12-5.1.

148. Defendants took deliberate actions in choosing to violate Federal Motor Carrier Safety Regulations, State trucking safety regulations, trucking industry standards, and Georgia law in a number of ways as articulated herein, including but not limited to by allowing their agent and/or employee to operate a commercial motor vehicle under the influence of drugs and alcohol.

149. Defendant Mayflower and/or Defendant Moholland knew or should have known that Defendant Locke was unfit and/or unskilled in the shipping and transportation of goods, and chose to not properly or reasonably oversee, orchestrate, and/or supervise this operation.

150. Any cap on the amount of punitive damages applied in this case would be unconstitutional for several reasons, including that it contravenes the inviolate right to trial by jury contained in Georgia's Constitution.

## COUNT TEN – LIABILITY OF WESCO INSURANCE COMPANY

151. Plaintiff incorporates by herein by reference all of the allegations of the previous paragraphs of this Complaint.

152. Defendants Mayflower, Locke, and Moholland are motor carriers under both Federal and Georgia law.

153. At all times relevant to this Complaint, Defendant Wesco was the insurance provider for Defendant Moholland.

154. As the insurance provider for Defendant Moholland, Plaintiff may bring a direct action against Defendant Wesco for damages sustained in the wreck giving rise to this Complaint.

155. Plaintiff is entitled to recover from Wesco for the negligence of Defendants Mayflower, Moholland, Locke, and their employee/agent.

156. Plaintiff has a cause of action against Defendant Wesco and are entitled to recover for their damages.

## COUNT ELEVEN – LIABILITY OF NATIONAL INDEMNITY COMPANY

157. Plaintiff incorporates by herein by reference all of the allegations of the previous paragraphs of this Complaint.

158 Defendants Mayflower, Locke, and Moholland are motor carriers under both Federal and Georgia law.

159. At all times relevant to this Complaint, Defendant National Indemnity was the insurance provider for Defendant Locke.

160. As the insurance provider for Defendant Locke, Plaintiff may bring a direct action against Defendant National Indemnity for damages sustained in the wreck giving rise to this Complaint.

161. Plaintiff is entitled to recover from Defendant National Indemnity for the negligence of Defendants Mayflower, Moholland, Locke, and their employee/agent.

162. Plaintiff has a cause of action against Defendant National Indemnity and is entitled to recover for their damages.

## COUNT TWELVE – LIABILITY OF XYZ COMPANIES 1-3

163. Plaintiff incorporates herein by reference all of the allegations of the previous paragraphs of this Complaint.

164. Upon information and belief, Defendants Mayflower, Locke, and Moholland have one or more additional policies of excess insurance that may be with carriers other than Wesco and Defendant National Indemnity, named herein under Georgia's Direct Action Statute.

165. Any such insurance providers have responsibility for the actions and inactions of Defendants and are sued under the same cause of action as Defendant Wesco and Defendant National Indemnity.

166. As the insurance provider for Defendant Mayflower, Defendant Moholland, and Defendant Locke, Plaintiff may bring a direct action against one or more of the entities herein identified as XYZ Companies 1-3 for damages sustained in the wreck giving rise to this Complaint.

167. Plaintiff is entitled to recover from XYZ Companies 1-3 for the negligence of Defendants Mayflower, Locke, Moholland and their employee/agent.

168.   Plaintiff has a cause of action against Defendant XYZ Companies 1-3 and is entitled to recover for their damages.

## DAMAGES

169. Plaintiff incorporates herein by reference all of the allegations of the previous paragraphs of the Complaint.

170. Defendants directly and proximately caused Plaintiff's injuries through one or more of the negligent acts or omissions stated above. Therefore, Defendants are directly and/or vicariously liable for the Plaintiff's injuries that resulted from this wreck.

171. That as a direct and proximate result of the negligence, gross negligence, carelessness, recklessness, willfulness and wantonness of Defendants, as is set forth more fully above, Plaintiff was injured, has endured pain and suffering, has suffered mentally and emotionally, and have incurred, and will incur, various medical expenses, and have otherwise been damaged and injured.

172. Plaintiff is entitled to judgment against Defendants for actual, compensatory, and exemplary or punitive damages for their personal injuries set forth herein in an amount that is fair, just, and reasonable, plus whatever costs, interest, and attorneys' fees under O.C.G.A. § 13-6-11 that she may be entitled as determined by a jury.

WHEREFORE, PLAINTIFF demand and pray as follows:

a) That process be issued and service be had upon Defendants as provided by law;

b) For a trial by a jury comprised of twelve (12) persons as to all issues so triable;

c) For judgment in favor of Plaintiff and against Defendants;

d) That Plaintiff to recover all damages for all losses compensable under Georgia law as set forth above;

e) That the Court award punitive damages against Defendants;

f) That all expenses and costs of litigation, including attorney's fees be cast against the

Defendants; and

g) For such other and further relief as the Court deems just and proper.

Respectfully submitted,

TAULBEE, RUSHING, SNIPES,
MARSH & HODGIN, LLC

Post Office Box 327                              /s/ Daniel B. Snipes
Statesboro, Georgia  30458                   Daniel B. Snipes
(912) 764-9055 (telephone)                 Georgia Bar No. 665769
(912) 764-8687 (facsimile)                   dsnipes@statesborolawgroup.com
                                                          Attorneys for Plaintiff


HASTY POPE LLP

529 Green Street                                 /s/ Jonathan A. Pope
Gainesville, GA  30501                        Jonathan A. Pope
(770) 535-9026 (telephone)                 Georgia Bar No. 581245
(770) 535-9027 (facsimile)                   jpope@hastypope.com
                                                          Attorney for Plaintiff


CHANFRAU & CHANFRAU

701 N. Peninsula Drive                        /s/ William M. Chanfrau, Jr.
Daytona Beach, Florida 32118             William M. Chanfrau, Jr., Esq.
(386) 258-7313 (telephone)                 FL Bar No. 0115339
(386) 238-1464 (facsimile)                   Motion for Pro Hac Vice pending